CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
April 11, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **DAVID EDWARD CAVALIERI** | ) | Case No. 7:23-cv-00092 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **MS. C. BOYERS, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

David E. Cavalieri, a Virginia inmate acting *pro se*, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights by failing to provide him with adequate dental care, as well as causing multiple lapses in his prescribed pain medications. Defendants Dr. P. Ohai, C. Boyers, D. Bland, A. Worrell, A. Starkey, M. Stanford, and A. Jamerson ("the medical defendants") have filed a motion to dismiss the Amended Complaint[1] for failure to state a claim. Dkt. 71. Defendants M. Amonette, M.D., C. Bryant, H. Clarke, J. Dillman, L. Edmonds, M. Elam, T. Harvey, D. Hudson, D. Meinhard, S. Moe-Willis, E. Moore, A.D. Robinson, J. Snoddy, A. Tucker, the Virginia Department of Corrections ("VDOC") and the Commonwealth of Virginia ("the non-treating defendants") have also filed a motion to dismiss for failure to state a claim. Dkt. 82. The remaining defendant, B. Frost,[2] has filed a Waiver of Answer. Defendants' motions to dismiss will be granted in part and denied in part.

---

[1] Plaintiff's Amended Complaint (Dkt. 57) did not include the grievances and other exhibits that he attached to his original Complaint (Dkt. 1). While a plaintiff's amended complaint generally supersedes his original complaint, I will consider the exhibits attached to the original Complaint, and cited in the Amended Complaint, in deference to the plaintiff's *pro se* status. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012).

[2] Defendant B. Frost, N.P. filed a Waiver of Answer as permitted by 42 U.S.C. § 1997e(g)(1), though she also listed various affirmative defenses, including failure to state a claim upon which relief may be granted.

I.     Facts

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Construing the Amended Complaint in this manner, Cavalieri alleges the following facts giving rise to his claims.

Cavalieri, an inmate in the custody of the VDOC, was incarcerated at Buckingham Correctional Center during the relevant events. Am. Compl. ¶ 1, Dkt. 57. Cavalieri named 25 defendants in his Amended Complaint, including both medical defendants and non-treating defendants, alleging failures to provide timely dental care for diagnosed cavities, resulting in two teeth extractions, as well as failures to provide needed pain medications, both immediately following a dental surgery, and for his ongoing spinal issues. Cavalieri asserts that VDOC Policy 720.1 mandates that "the Facility Unit Head and the Health Authority are jointly responsible for ensuring prisoners have access to meaningful, timely, adequate health care, including dental care." *Id.* ¶¶ 10, 43

Claim 1 Extraction Tooth No. 12

Cavalieri was transferred to Buckingham Correctional Center on October 25, 2019; during his intake with the medical department staff on that date, he mentioned his recent oral surgery and asked to be "scheduled 'as soon as possible' with the facility's dentist." Am. Compl. ¶¶ 8, 9. At that time, his medical file likewise "indicated the need for immediate dental treatment of 'tooth no. 12' as 'restorable.'" *Id.* Despite receiving a response in November 2019 from the dental department stating "you are scheduled to see the provider," Cavalieri was not scheduled with a dentist, and he did not receive timely, adequate dental treatment on tooth no. 12, resulting

in the tooth ultimately requiring extraction on November 4, 2020.[3] *Id.* at 11. Cavalieri contends he made multiple requests for dental care, and that by June 2020 he was in chronic pain. *Id.* at ¶¶ 11-16. In June 2020, Cavalieri was told that VDOC and Buckingham Correctional Center policy provided that "only prisoners willing to accept extractions were being given dental care." *Id.* ¶ 16. Cavalieri alleges that, despite defendant Boyer's responses to his request for dental treatment that he was scheduled to see a dentist, there was, in fact, no dentist, and no schedule. *Id.* ¶ 18. By August 20, 2020, Cavalieri alleges he had been "in near constant pain" for over 90 days, limiting his ability to both chew and sleep, and this pain continued until tooth no. 12 was extracted at VCU Dental Clinic on November 4, 2020. *Id.* at ¶ 23. Cavalieri alleges he cannot chew food on his left side and has a "noticeable facial deformity." *Id.* ¶ 25.

Cavalieri alleges that the failure of the defendants named in Claim 1[4] to provide him with timely dental care to treat the cavity in tooth no. 12, resulting in a tooth extraction, violated the VDOC Policy that states the Facility Unit head and Health Authority are to provide outside resources to obtain necessary medical care when not available at a particular prison and was unconstitutional.

Claim 2 Post-surgical Pain Medication

Cavalieri alleges that following his return to Buckingham Correctional Center from oral surgery on November 4, 2020 at 4:00 p.m., he was supposed to receive Motrin and Tylenol three

---

[3] Cavalieri alleges this response was signed by C. Shanks, DA, who is defendant C. Boyers in the Amended Complaint. Am. Compl. ¶ 9.

[4] Cavalieri asserts Claim 1 against the following medical defendants: C. Boyers (Dental Assistant), D. Bland (RNCB, Medical Authority), A. Starkey (RNCA), and Paul C. Ohai, M.D.

He asserts Claim 1 against the following non-treating defendants: John Woodson (former BCC Warden), Jeffrey Snoddy (Former BCC Ass't Warden), Stacy Meinhard (BCC Ombudsman), Christine Bryant (Operations Manager), Deborah Hudson (Central Regional Ombudsman), S. Moe-Willis (Central Regional Ombudsman), and Teresa Harvey (Director Health Services / Ombudsman Director).

3

times per day, for seven days. Am. Compl. ¶ 35. However, he was not given any medication until 10:40 a.m. on November 5, 2020, at which point he received only half of the prescribed medication. Cavalieri alleges he was "in a lot of pain" due to not receiving his pain medication following surgery. Cavalieri brings this claim against medical defendants D. Bland and A. Starkey, stating they knew he needed pain medication, but did nothing to ensure he received the medication.

        Claim 3 Extraction Tooth No. 28

After recuperating from the extraction of tooth no. 12, Cavalieri submitted a request for dental treatment on December 7, 2020, indicating he had four teeth that had been previously evaluated by a dentist as requiring cavity treatment. *Id.* ¶ 44. While Cavalieri was told he was on the routine treatment list, he claims (1) he should have been scheduled under VDOC Policy 720.6, not for a "level 1" teeth cleaning and routine checkups, but instead for "level 3" care for his diagnosed cavities; and (2) Buckingham did not have a dentist to provide routine dental treatment in any event.[5] *Id.* ¶ 46. Cavalieri submitted multiple requests for dental treatment, ultimately receiving dental treatment on April 6, 2021. *Id.* ¶ 48. However, he claims the dentist was not "licensed or certified" and provided improper treatment for tooth no. 28, which required extraction four months later. *Id.* On July 16, 2021, Cavalieri requested dental treatment, complaining of significant pain in tooth no. 28, however, despite multiple additional requests and emergency grievances for dental treatment, he received no dental treatment until tooth no. 28 was extracted on August 24, 2021. Cavalieri alleges that a dentist identified tooth no. 28 in

---

[5] For example, in a response to a request for dental services dated December 22, 2020, specifically requesting to be scheduled to see a dentist for cavities that need treatment, staff responded, "Per dental protocol – only emergency treatment will be given at this time during Covid 19. You are on the schedule for routine dental treatment." Dkt. 1-1, at 24.

4

November 2020 as "needing treatment and being restorable" and that defendants[6] failure to provide him with adequate dental care, specifically treatment for diagnosed cavities, resulted in the extraction of tooth no. 28.

Claim 4 – Pain Medication Delayed and Denied

Cavalieri alleges that between January 16, 2020 and January 9, 2023, defendants failed to provide continuity of his medications, leaving him with no medication for days at a time, and on one occasion 40 days without his medication. Compl. ¶ 56. Cavalieri suffers from constant pain due to spinal injuries. *Id.* ¶ 59. In the Amended Complaint, Cavalieri details the requests he submitted to the medical department, including that the defendants allowed his pain medication prescriptions to run out on multiple occasions, leaving him without pain medication for days and weeks at a time.

Claim 5, 6, 7

Claim 5 alleges deliberate indifference and medical negligence against VDOC administration officials for the tooth extractions and non-continuity of medications outlined in Claims 1 through 4. This Count specifically names the VDOC, Harold Clarke, A. David Robinson, Mark Amonette, M.D., Teresa Harvey, Adrian Tucker, Marcus Elam, Jeffrey Dillman, Christine A. Bryant, Stacy Meinhard, Deborah Hudson, Sequoya Moe-Willis, and Larry T. Edmonds. Claim 6 alleges that all 25 named defendants violated their statutory duty of health care by failing to help Cavalieri despite his multiple complaints regarding his need to be treated by a dentist and receive timely and consistent pain medication. Claim 7 alleges medical

---

[6] Cavalieri brings Clam 4 against medical defendants Dr. Ohai, Bland, Stanford, Starkey, Jamerson, and Worrell, and against non-treating defendants S. Meinhard, S. Moe-Willis, Hudson, Harvey, Dillman, Bryant, Edmonds, Moore, Woodson, and Snoddy. He also alleges Claim Four against Barbara Frost, who is represented by separate counsel and has filed a Waiver of Answer to the Amended Complaint.

negligence against medical defendants Paul C. Ohai, D. Bland, A. Starkey, A. Worrell, A. Jamerson, and M. Stanford, and against non-treating defendant J. Dillman[7] for failure to provide him with adequate medical care, and failure to report and resolve his complaints of inadequate care. As the defendants point out, Claims 5, 6, and 7, are largely duplicative of various allegations in Claims 1 through 4.

## II.    Standard of Review

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. *Id.*

"[C]ourts are obligated to liberally construe pro se complaints, however inartfully pleaded." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017). Liberal construction, however, is not without limits and a *pro se* plaintiff still must allege facts that state a cause of action. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.    Analysis

### A.   The Medical Defendants' Motion to Dismiss

The Amended Complaint alleges Claims 1, 2, 3, 4, 6, and 7 against some or all of the

---

[7] Claim No. 7 is also alleged against defendant B. Frost, who is represented by separate counsel, and has filed a Waiver of Answer.

medical defendants. The medical defendants move to dismiss Claims 1, 2, and 3 as barred by the statute of limitations, and Claim 4 for failure to state a claim. The medical defendants argue that because Claims 6 and 7 are duplicative of Claims 1–4 they should also be dismissed.

(1) Statute of Limitations

With allowances for tolling during administrative exhaustion and applying the prison mailbox rule, Claims 1, 2, and 3 are all timely, and the medical defendants' motion to dismiss these claims will be denied. Because Cavalieri's § 1983 claims are not specifically governed by a statute of limitations, Virginia's two-year statute of limitations for personal injury actions applies. *See Owens v. Okure*, 488 U.S. 235, 240–41 (1989) (noting that the limitations period from a State's general personal injury statute applies to § 1983 claims); Va. Code Ann. § 8.01-243(A) (providing that the statute of limitations period for personal injury actions in Virginia is "two years after the cause of action accrues").

Claim 1 accrued when Cavalieri's tooth no. 12 was extracted on November 4, 2020. On November 5, 2020, Cavalieri initiated the grievance process by filing an Informal Complaint regarding his alleged inadequate dental care and extraction (Dkt. 1-2 at 2), and he diligently followed the process through until the end, when he received a Level II response, dated April 5, 2021, indicating "In accordance with OP 866.1 governing the Offender Grievance Procedure, Level II is the last appeal for this complaint. All administrative remedies have been exhausted regarding this issue."[8] Dkt. 1-2 at 10. "[B]ecause the PLRA requires administrative exhaustion, application of federal equitable tolling principles is appropriate to account for the time prisoners spend exhausting their administrative remedies." *Fauconier v. Clarke*, 966 F.3d 265, 275 (4th

---

[8] Cavalieri filed a grievance on November 5, 2020 and he received a Level I response dated December 18, 2020, finding his grievance unfounded. Dkt. 1-2 at 6. Cavalieri appealed this response on December 22, 2020 (Dkt. 1-2, at 7) and he received a Level II response, dated April 5, 2021, finding his grievance unfounded. Dkt. 79-2 at 6, citing Appx. A-9, attached to the original Compl. at Dkt. 1-2, at 1-10.

Cir. 2020) (citing *Battle v. Ledford*, 912 F.3d 708 (4th Cir. 2019)). In *Battle*, the Fourth Circuit noted that, without tolling, the purposes of § 1983 prisoner claims is frustrated as "as much as seven months could be subtracted from the period in which a prisoner can file a federal claim." *Id.* at 715 (also citing examples from other circuits where the period for exhaustion could take up to three years). Here, it took Cavalieri five months to exhaust his administrative remedies, from November 5, 2020 through April 5, 2021, and the statute of limitations will be tolled during this period.

Both the medical and non-treating defendants argue that Cavalieri's mailing of his Level II appeal on December 22, 2020 "satisfied his requirements under the grievance process" as the "last active step" to exhaust his administrative remedies. Dkt. 83 at 7[9], Dkt. 87 at 4. However, defendants provide no clear case support for this position, and indeed courts have dismissed lawsuits filed by prisoners under such circumstances for failure to exhaust. For example, in *Jones v. Riley*, the court wrote:

> Plaintiff filed his Step 2 grievance form with the prison on June 30, 2012 and filed his Amended Complaint in this case on July 10, 2012. The I GC had a maximum of seventy days to complete the grievance process and respond. Although Plaintiff completed his last active step in the grievance process, he did not wait the allotted amount of time for the IGC to respond and complete the entire process. Plaintiff must *properly* exhaust his administrative remedies before filing an action in federal court. Because Plaintiff did not wait for a response, he did not properly exhaust his administrative remedies and his claim is barred at this time.

No. 1:12cv1033, 2013 WL 3270449, at *2 (D.S.C. June 26, 2013), *aff'd sub nom. Jones v. Lane*, 546 F. App'x 299 (4th Cir. 2013).

---

[9] The medical defendants argue that "only the time an inmate spends actively pursuing administrative remedies can be tolled" and states that Cavalieri is entitled to only 47 days of tolling, from November 5, 2020 to December 23, 2020, which is the time between when he filed a written complaint with prison officials, to when he mailed his "level II appeal" of that decision. Dkt. 87.

Further, under the PLRA, an inmate has not exhausted his administrative remedies, as required, until the conclusion of administrative proceedings. *See Fauconier*, 966 F.3d at 274–75. The defendants' argument that tolling ends when the inmate "takes his last active step to exhaust his administrative remedies," i.e. mailing his final appeal, fails to recognize that without knowing the prison's response to the grievance, or at least having the time for a response to expire, the inmate has not exhausted his administrative remedies. The purpose of requiring prisoners to exhaust administrative remedies is "so that prison officials have been given an opportunity to address the claims administratively." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Though prison officials are not *required* to respond, they must be given the opportunity, which necessarily requires waiting the allotted response time, not just taking the "last active step to exhaust" as defendants argue. Here, prison officials did respond on April 5, 2021, specifically telling Cavalieri that "[a]ll administrative remedies have been exhausted regarding this issue."[10] Dkt. 1-2 at 10. Accordingly, allowing for tolling from November 5, 2020 through April 5, 2021, as Cavalieri's Complaint was filed in February 2023,[11] Claim 1 is timely.

Claim 2, alleging medical defendants D. Bland and A. Starkey's failure to give him his post-surgical pain medication, accrued on November 6, 2020.[12] Cavalieri filed an Informal Complaint on November 8, 2020 (Dkt. 1-2 at 11) regarding the first 22 hours without medication, which he alleges received no response, and then filed a grievance on November 28,

---

[10] Cavalieri received a Level 1 response dated December 18, 2020, finding his grievance unfounded. Dkt. 1-2 at 6. Cavalieri appealed this response on December 22, 2020. Dkt. 1-2, at 7. The non-treating defendants argue that the statute of limitations was tolled only through this December 22, 2020 date; however, they do not address that Cavalieri appealed the Level 1 response to Level 2 in order to exhaust his administrative remedies, not receiving a Level 2 response until April 2021. Dkt. 1-2, at 10.

[11] As discussed below, under the prison mailbox rule, Cavalieri's Complaint was filed on February 3, 2023.

[12] The medical defendants concede Claim Two accrued on November 6, 2020. Dkt. 72 at 5.

9

2020. The Level I response, dated December 18, 2020, found this grievance was founded, and staff was "advised to adhere to guidelines and procedure." Dkt. 1-2 at 15. Cavalieri appealed the Level I response, and the Level II response, dated February 5, 2021, also found the grievance founded. Dkt. 1-2 at 17. Cavalieri filed a grievance about the second timeframe without medication. Dkt. 1-2 at 18. Cavalieri received a Level I response dated December 18, 2020, finding the grievance unfounded. Cavalieri appealed, and received a Level II response dated February 5, 2021, finding the grievance unfounded. Dkt. 1-2, at 24. The statute of limitations would thus be tolled during the period Cavalieri pursued the grievance procedure from November 8, 2020 until February 5, 2021.[13]

Cavalieri's Complaint is dated February 2, 2023, is post-marked February 8, 2023, and was docketed on February 10, 2023. Dkt. 1. Cavalieri states he deposited his Complaint in the prison internal mail system on February 3, 2023. In support, Cavalieri provides a Trust System – Withdrawal Request for posting for legal mail, dated February 3, 2023.[14] Dkt. 79-3. Under the prisoner mailbox rule, Cavalieri's Complaint is filed with the court as of the date he placed the pleading in the prison systems outgoing mail to the court, February 3, 2023. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733 (4th Cir. 1991) (applying prisoner mailbox rule to § 1983 case). Accordingly, Claim 2 is not barred by the applicable two-year statute of limitations.

---

[13] Cavalieri states he received the Level II response on February 10, 2021. Dkt. 79-2, at 7. However, whether the statute of limitations is tolled until the date of the response or the date the response was received does not matter for our purposes.

[14] The medical defendants ask the court not to consider Cavalieri's arguments regarding when he mailed the Complaint because these allegations were "not in the Complaint." Dkt. 87, fn 3. However, the "prison mailbox rule," deems a document filed as of the date that a prisoner delivers it to prison officials to be mailed to the court. *See Houston v. Lack*, 487 U.S, 266 (1988); *see also United States v. McNeill*, 523 F. App'x 979, 981 (4th Cir. 2013) ("[A] pro se litigant's legal papers are considered filed upon 'delivery to prison authorities, not receipt by the clerk.'").

Claim 3 accrued when tooth no. 28 was extracted on August 24, 2021. Dkt. 57. The medical defendants allege this claim accrued when Cavalieri was "erroneously placed" on the routine dental treatment list on either December 15, 2020 or December 26, 2020. Dkt. 87. However, the alleged harm is not merely being placed on a routine dental treatment list, but instead the ultimate extraction of tooth no. 28 – causing pain, difficulty chewing, and facial deformity. "A Section 1983 claim of deliberate indifference ordinarily accrues when a plaintiff becomes aware or has reason to know of the harm inflicted." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). Here, Cavalieri did not become aware of the harm until his tooth was extracted, on August 24, 2021.  Accordingly, claim three is not barred by the two-year statute of limitations, even without tolling, as the Complaint was filed on February 3, 2023.

(2) Failure to State a Claim

In Claim 4, Cavalieri alleges the listed defendants[15] failed to provide continuity of medication, allowing his medication to lapse "twenty-six separate times, from January 16, 2020 through January 9, 2023," leaving him with no medication for various time periods, often for over 10 days, and on one occasion over 40 days without medication. Dkt. 57 at 33. The medical defendants argue that Claim 4 fails because temporary lapses in pain medication do not amount to deliberate indifference to a serious medical need and Cavalieri has failed to allege that he suffered substantial harm as a result of any delay or that he was in severe pain. Dkt. 72 at 9. They also ask the court to dismiss defendant Jamerson, arguing that Cavalieri does not make sufficient factual allegations "specific to Jamerson." Dkt. 72 at 10. Cavalieri names Jamerson in paragraph

---

[15] Cavalieri brings Claim 4 against medical defendants Paul C. Ohai, M.D., D. Bland, A. Starkey, M. Stanford, and Amy Jamerson.

Claim 4 is also alleged against non-treating defendants S. Meinhard, S. Moe-Willis, D. Hudson, T. Harvey, Jeffrey Dillman, Christine A. Bryant, Larry T. Edmonds, Eva Moore, John Woodson, Jeffrey Snoddy, and Amy Worrell, as well as B. Frost, who is represented by separate counsel.

11

54 and alleges he "personally notified" her that he was in pain and out of his medication, but she did nothing to help him on various dates listed in the Amended Complaint. Dkt. 57, ¶ 73. Accordingly, Jamerson will not be dismissed at this stage.

To establish an Eighth Amendment claim for denial of medical care, Cavalieri must show that jail officials were deliberately indifferent to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). This requires establishing both that his medical need was sufficiently serious and that the defendant was deliberately indifferent "by either actual intent or reckless disregard." *Id.* at 106. A significant delay in providing medical treatment may constitute deliberate indifference if the plaintiff can establish that the delay resulted in objectively "substantial harm." *See Webb v. Hamidullah*, 281 Fed. App'x. 159, 166 (4th Cir. 2008) (unpublished decision).

Courts in this district have found that a "single denial of medication" or "negligent management of an inmate's prescriptions" does not suffice to state a claim for deliberate indifference. *See Corbin v. Movassaghi*, No. 6:22cv12, 2022 WL 3579903, at *5 (W.D. Va. Aug. 19, 2022) (collecting cases). Here, however, Cavalieri alleges multiple instances of days or even weeks without prescribed pain medications, and, under some circumstances, allegations of delayed administration of prescribed medical treatment can state a claim under the Eighth Amendment. *Smith v. Smith*, 589 F.3d 736, 738–39 (4th Cir. 2009). Delayed treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Formica v. Aylor*, No. 7:14cv449, 2015 WL 4648009, at *3 (W.D. Va. Aug. 5, 2015) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). Cavalieri alleges multiple days-long lapses in his pain medications, asserting that he suffered severe pain,

12

including chronic muscle spasms, without his medication, due to his spinal issues. Accordingly, the medical defendants' motion to dismiss Claim 4 for failure to state a claim is denied.[16]

### B. The Non-Treating Defendants

The Amended Complaint alleges Claims 1, 3, 4, 5, 6, and 7 against some or all of the non-treating defendants. The non-treating defendants move to dismiss these claims under Rule 12(b)(6). They also assert Claim 1 (and portions of Claims 6 and 7 duplicative of Claim 1) are barred by the statute of limitations; however, as discussed above, I have already found Claim 1 is timely. As discussed below, I will grant their motion to dismiss in part and deny it in part.

#### (1) The Commonwealth of Virginia and the VDOC are not Proper Defendants

The non-treating defendants argue that the Commonwealth of Virginia and the VDOC are not proper defendants. Cavalieri contends the Commonwealth of Virginia is a proper defendant because under § 8.01-195.1, he is required to name the state in a state-law medical malpractice suit and that the VDOC is a proper defendant because it has the role of "a state health care provider." Dkt. 99-1, at 16. However, the VDOC cannot be sued under the VTCA. *See The Rector & Visitors of The Univ. of Va. v. Carter*, 591 S.E.2d 76, 78 (Va. 2004) ("Under the plain language of the Act, the Commonwealth (and certain 'transportation districts' not here relevant) are the only entities for which sovereign immunity is waived."). Further, Cavalieri's claim against the Commonwealth of Virginia may not be brought in this court because while the VTCA waived sovereign immunity to allow certain tort claims against the state, those claims may be brought only in Virginia state courts, not in federal court. *See Creed v. Virginia*, 596 F. Supp. 2d 930, 938–39 (E.D. Va. 2009).

---

[16] Because the medical defendants' motion to dismiss claims 1 through 4 is denied, their motion to dismiss claims 6 and 7 as "duplicative of claims 1–4" is also denied.

13

Likewise, the VDOC, as an "arm of Virginia," and may not be sued under § 1983, because it is immune from suit under the Eleventh Amendment. *Johnson v. McCowan*, 549 F. Supp. 3d 469, 475 (W.D. Va. 2021). Section 1983 of Title 42 does not abrogate a state's sovereign immunity from suit, but instead allows suits against "persons"—generally state officials—for violations of civil liberties. The state itself, including entities that are "arms of the state," are not "persons" under Section 1983 and remain immune from suits like this. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

To the extent Cavalieri is trying to bring tort or § 1983 claims against the VDOC or the Commonwealth of Virginia, these are dismissed.

(2) Failure to State a Claim

Defendants argue Cavalieri has failed to state a claim against the non-treating defendants because his allegations against these defendants are largely conclusory, as he fails to connect individual defendants to specific conduct and injuries. Cavalieri asserts that the non-treating defendants named in Claims 1 and 3 were on notice that Cavalieri had a serious need for dental care, but was not getting timely treatment, because of the VDOC and Buckingham Correctional Center policy that only prisoners willing to accept tooth extractions receive dental care. Cavalieri has included as exhibits in the record requests for dental treatment, grievances, and responses that were directed to or answered by various non-treating defendants. Cavalieri also indicates that VDOC policy requires all emergency grievances to be reviewed by non-treating defendants S. Meinhard, C. Bryant, S. Moe-Willis, and D. Hudson. In Claim 4, Cavalieri claims the non-treating defendants are liable for the lapses in his pain medication, alleging they are responsible under VDOC policy for ensuring the medical department is operating properly and for providing

14

continuity of medication. Claims 5, 6, and 7[17] are largely duplicative of the allegations Cavalieri makes in Claims 1 through 4.

To properly state a claim under § 1983, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Additionally, where an inmate is under the care of medical personnel, as was the case here, non-medical prison officials generally cannot be held liable for a failure to provide an inmate medical treatment. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Non-medical personnel are entitled to rely on the professional judgment of medical practitioners to determine appropriate treatment for a patient. *Id.*

(a) Eighth Amendment Violations

As stated above, prisoners have a constitutional right to necessary medical care for serious medical needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A deliberate indifference claim consists of two components, objective and subjective." *Id.* Objectively, "the inmate's medical condition must be serious" in the sense that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Formica*, 739 F. App'x 745, 754 (4th Cir. 2018). Pertinent here, tooth cavities can present a serious medical need:

---

[17] To the extent that Cavalieri is bringing these claims against the non-treating defendants in their supervisory capacities, his claim fails because the doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 694 (1978).

> As courts of appeals have recognized, a tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction, and presents a serious medical need.

*Id.* at 756. (cleaned up) (citations omitted).

Subjectively, the prison official must have "actual . . . knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's [own] action or inaction." *Jackson*, 775 F.3d at 178. "[W]hen a medical professional of a jail facility knows of a serious medical need, the Eighth Amendment requires reasonable action." *Formica*, 739 F. App'x at 757. "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Id.* at 754. Finally, to be unconstitutional, a defendant's conduct must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851 (4th Cir. 1990).

The non-treating defendants argue that Cavalieri's Complaint fails to adequately allege that "the non-treating, non-medical defendants should have challenged the course of treatment by medical providers." Dkt. 83 at 14. In support of his claims regarding tooth nos. 12 and 28, Cavalieri emphasizes his repeated requests for dental treatment and that these teeth were restorable with proper dental treatment. However, despite his repeated requests to be scheduled with a dentist, beginning on his transfer and medical intake at the Buckingham Correctional Center on October 25, 2019, he did not see a dentist for over a year until November 4, 2020 when tooth no. 12 had to be extracted.[18] *Id.* Likewise, regarding tooth no. 28, Cavalieri requested

---

[18] Cavalieri states he submitted requests to the Buckingham Correctional Center for dental treatment for tooth no. 12 on October 27, 2019, January 15, 2020, March 2020, an emergency grievance on May 18, 2020, and additional requests for dental care on August 17, 2020, and September 1, 2020. Am. Compl. at 11-13. Cavalieri

16

to see a dentist on December 7, 2020, but was not seen by a dentist until April 6, 2021. Am. Compl. ¶ 48. Further, Cavalieri contends that the dentist did not "competently or properly treat tooth no. 28" which had to be extracted on August 24, 2021. Cavalieri asserts:

> Defendants Meinhard and Bryant both knew that BCC did not have a dentist and was providing no dental treatment to Cavalieri, or anyone else, and that defendants Woodson, Snoddy, Meinhard, Ohai,[19] Bryant, Harvey, S. Moe-Willis, and Hudson, knew the BCC policy was that "only prisoners willing to accept tooth extractions were being given dental care" which was unconstitutional.

Am. Compl. at 12–13. Cavalieri's point is that because he has alleged there was no dentist and there was no schedule – the medical professionals' response that Cavalieri has been scheduled to see a dentist should have raised doubts with non-treating prison officials. Indeed, Cavalieri has alleged that the non-treating defendants were aware of this protocol and/or created it. Cavalieri included as an exhibit the Level II grievance response signed by defendant Health Service Director J. Dillman, regarding the delayed treatment and ultimate extraction for tooth no. 12, where Dillman indicated that the dental staff scheduled him in proper order of priority, "according to treatment classification, as well as current COVID-19 protocols." Dkt. 1-2, at 10. Regarding the alleged lack of timely dental treatment, Cavalieri's allegations withstand the non-treating defendants' motion to dismiss, in large part because his constitutional challenge relates to dental treatment policies permitting long delays in non-emergency dental treatment during the COVID-19 pandemic or when the jail lacks a facility dentist, for which some of the non-treating defendants may be responsible.

---

alleges that on "every 'Request' for dental treatment, defendant Boyers (BCC dental assistant a/k/a C. Shanks) responded along the lines of "you are scheduled to see a dentist" when in fact there was no attempt to schedule a dentist to provide dental care other than extractions. Am. Compl. ¶ 18.

[19] Dr. Ohai is referred to as a medical defendant in this opinion and is being represented by counsel for the medical defendants.

17

However, Cavalieri's claims that the non-treating defendants are liable for the lapses in his pain medication do not survive, as the non-treating defendants were allowed to rely on the medical professionals as to the pain medication that Cavalieri required. To hold the non-treating defendants liable, Cavalieri must show that each defendant was personally involved with a denial of treatment, deliberately interfered with a doctor's treatment, or tacitly authorized or was indifferent to the prison physician's misconduct. *Miltier*, 896 F.2d at 854. Cavalieri has not done so. Accordingly, the non-treating defendants' motion to dismiss will be granted as to these claims.

Likewise, to the extent that Cavalieri claims the court should hold these non-treating defendants liable for the alleged unconstitutional conduct of subordinate VDOC employees, these claims are also dismissed. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). I will also dismiss Cavalieri's claims seeking monetary damages against any of the defendants in their official capacities, because such relief is not available under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).

**IV.    Conclusion**

Cavalieri named 25 defendants in this action—both medical and non-medical— relating to the care he received as an inmate at Buckingham Correction Center. The Amended Complaint alleges sufficient facts by a plaintiff proceeding *pro se* to survive the motions to dismiss as provided in this memorandum opinion. Ultimately to establish liability under 42 U.S.C. § 1983, Cavalieri will have to identify the specific acts or omissions by each defendant, acting under color of state law, which violated his constitutional rights. Accordingly, it is ordered as follows:

(1) The medical defendants' Motion to Dismiss Claims 1, 2, 3, 4, 6 and 7 is **DENIED**;

(2) The non-treating defendants' Motion to Dismiss is **DENIED** as to Claims 1 and 3, and **GRANTED** as to Claim 4. Regarding Claims 5, 6, and 7, the non-treating defendants' Motion to Dismiss is **GRANTED** only as to the portions of those claims alleging failure to provide adequate pain medication, and **DENIED** as to the dental care allegations;

(3) The non-treating defendants' Motion to Dismiss the VDOC and the Commonwealth of Virginia is **GRANTED**;

(4) The non-treating defendants' Motion to Dismiss is **GRANTED** as to all claims of vicarious liability, and all claims for monetary damages against the defendants in their official capacities; and

(5) A separate pre-trial order establishing a discovery schedule will follow.

An appropriate Order accompanies this Memorandum Opinion.

Entered: April 11, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge